Good morning. I'm representing the plaintiff's appellant, Ms. Ferguson. The commissioner committed reversible error when he found that functional overlay meant that the appellant, Ferguson, was knowingly exaggerating her symptoms so she was malingering and not credible. The record contained a consultative report by Dr. Robert Schatz, a state agency specialist in internal medicine, who examined Ferguson on February 20, 1993, and advised that she appeared to have a functional overlay. At Ferguson's second hearing, which was held on August 2, 2001, medical advisor Dr. Gerald Weingarten testified that consultative examiners had difficulty evaluating Ferguson because of her functional overlay. Dr. Weingarten said a functional overlay results in symptom magnification by the patient, which is usually done subconsciously. The administrative law judge called on a psychiatrist, Dr. Mondry-Burke, to testify, and she said she did not know the meaning of MMPI tests on Ferguson. Although Dr. Mondry-Burke did not explain the basis for her concern, it is well known that the MMPI is widely used for disability claimants because it has a built-in test to reveal if the patient is malingering. When the administrative law judge wrote it... Excuse me. You're doing a good job of restating the record, but what is the error that you claim the ALJ made? Well, there's an — I've just discussed the first error, which is an error of fact that a functional overlay is not done intentionally by the patient. It's done subconsciously, and the definition given by Dr. Mondry-Burke, the psychiatrist, was totally incorrect. She said that this — first of all, she said she didn't know what it meant. Secondly, she said to her it had a negative connotation. How could that be? I checked the commissioner's listings for mental impairments or the DSM, the Diagnostic and Statistical Manual, for a definition of the term. And... In your view, then, that statement controlled the ALJ's decision? Of course it does. Absolutely. It was an incorrect definition, which the judge accepted. And Dr. Mondry admitted she didn't know what the term meant, and the judge never did any research to find out whether it was right or wrong. Now, I have cited a case called Agresti v. Social Security, which is a Massachusetts case. There's an excellent definition of psychosomatic disorders like this, including functional overlay. There's many terms that go with it — conversion reaction, hysteria, you name it, neurotic. All those terms fall in that category. And every definition, by any expert, is correct, recognizes this is a subconscious disease, and the patient has absolutely no control over it. Now, there's two MMPI tests. Dr. Mondry-Burk at the hearing... Counsel? Counsel. I just want to make sure I understand. Now, Dr. Weingarten said that the term functional overlay meant magnifying the symptoms, usually subconsciously, and Dr. Mondry-Burk said she didn't know exactly what was meant. And so it seems like since she didn't provide a definition and the definition was Dr. Weingarten's, there wasn't any direct conflict between their testimony. So how does that then lead to the ALJ error? Help me understand that. Okay. Dr. Weingarten said that this is symptom magnification, usually done subconsciously. On the other hand, the psychiatrist, Dr. Mondry-Burk, says she doesn't know what the term means. However, it has a negative connotation. She should never have gone into a negative connotation because she admitted she didn't know what the term meant. But if you get any dictionary, you know, as I mentioned, the DSM or the commissioner's listing, they will tell you that functional overlay, which is a form, it's a psychosomatic disorder that falls under somatoform disorder. It has many names, conversion reaction, hysteria, and so on, that this is done subconsciously by the patient. Now, there's proof of it in this particular case because there's two MMPI tests, one done early on in I believe it's 1976 by Dr. Fox, the second one done by Dr. Cohen in 1992, the same month almost that this claimant filed for disability benefits that proves this lady is not malingering. Now, did Ms. Ferguson make a request to the district court to remand the case to the commissioner for considering this evidence from Drs. Fox and Cohen? I didn't quite understand. What did the district court do? Did she ask the district court to remand the case so the ALJ could consider this new  I really don't know the answer to your question. I don't recall. Okay. I've answered those two questions, but I'll get back to my prepared statement. I think I was on the judge writing his decision. When he wrote his decision, he defined functional overlay as a malingering aspect because his finding of not credible is based strictly on Dr. Mondry-Burke's incorrect definition of functional overlay, and that by itself is reversible error. That should be very clear on this record. There's no doubt about that. And if you look at section 12.07 of the commissioner's listing of mental impairments, that's a definition for somatoform disorder, and functional overlay, which has many different names to it, psychosomatic, conversion reaction, and so on, clearly, this is, you know, it excludes malingering. There is no malingering connected with it. The judge's basic reason for denying this claim is his finding that this claimant was not credible, and that's totally unsupported by the record. Counsel, you have about two minutes left. Do you want to reserve any time for rebuttal? Yes, I'll do that. Thank you. Good morning. Shea Bond on behalf of the Commissioner of Social Security. Your Honors, the record in this case included a significant amount of inconsistent and conflicting evidence, and with that evidence, it was the sole responsibility of ALJ to resolve the conflicts. And even though there might have been some evidence in the record that would have supported the plaintiff's position, there was also evidence which supported the ALJ's decision that the claimant's complaints were not credible and that she was not disabled. The evidence included claimant's poor efforts on examination, her refusal to cooperate with certain exam requests by the consultative examiners. She can break descriptions of her symptoms. Isn't all of that consistent with a mental problem, though? I mean, almost all of the things that you have referred to so far, if not all of them, also could be symptoms of the mental disorder, emotional disorder that she is claiming. It could be, but it also could not. And under the standard that's been espoused by this Court, if there is evidence to support one side, but there's also evidence to support the ALJ's decision, the ALJ's decision and interpretation of that evidence must be upheld. And in this case, the claimant had been diagnosed with, I guess, various forms of depression, but there was no conclusive diagnosis that she actually had somatoform disorder, as suggested by the plaintiff's attorney today. And in absence of a conclusive diagnosis, the ALJ was perfectly entitled to weigh the evidence of these kind of inconsistent behaviors on examination against the claimant as a form of a conscious exaggeration. And I apologize to the Court, but the Commissioner wanted to cite an additional case in support of how the Ninth Circuit addresses a functional overlay. We did not cite it in our brief, and we can ---- The clerk should have a form for you to fill out after your argument that you can supply that citation to the Court and, of course, to opposing counsel. I appreciate that. I don't know if you want me to discuss it now or if I should just submit it thereafter. You can go ahead. Okay. Thank you very much. I would direct the Court's attention to the case of Ossenbrock v. Apfel. And the case is 240 F. 3rd, 1157, 2001. In that case, physical examination actually suggests there is a functional component to the claimant's physical pain. The evaluator who had examined the claimant noted that there was significant subjective components to the claimant's lower extremity pain. And the evaluator also noted that there were inconsistent physical findings which suggested that the claimant was highly unreliable. And I would suggest that this case actually supports the ALJ's evaluation of this evidence, which suggests that there might have been a functional component or functional overlay. With respect to the medical reports that were attempted to be supplied later on, they do seem to suggest what you're saying is missing from the evidence that is a specific diagnosis that would support a finding that there's a medical condition that causes the problems that we've been discussing. Why, then, is it fair to say that those reports would not have changed the outcome, which seems to be part of your argument? I believe Your Honor is referring to the evidence that was submitted to the appeals council. Yes, that's correct. And Dr. Collins and Dr. Cohen. The MMPI test results that were submitted, I believe, by Dr. Fox, they did not purport to actually diagnose the claimant with, say, somatoform disorder. That report simply suggested that the test results or people with similar test results might have hypochondriacal features or might have hysteronic complaints. There was absolutely no correlation between those test results and any kind of clinical findings that were in the record that were already before the ALJ. Can we consider these reports? In our brief, we argued that the plaintiff-appellant did not raise this issue specifically before the district court and that, therefore, the issue actually should be waived. If we reach it, though, it seems to me Dr. Fox said that the MMPI indicates a probable psychotic reaction, if not currently, then at those times when the patient is under stress. And Dr. Cohen diagnoses mixed personality disorder with hysteronic, dissociative, and hypochondriacal features. And so I guess assuming that we can reach that, I'm not really sure I understand why it doesn't change the landscape probably dramatically in favor of the opposite interpretation of the medical evidence and the other evidence, all of which suggests, for example, the ALJ relies on the fact that the incidents described at work were bizarre and, therefore, not believable. But on the other hand, the very fact that they were bizarre and that she believed them seems to support this possibility that she has psychotic reactions when she's faced with stress. So it seems kind of circular to me. I would respond, Your Honor, that, again, the reports that were included are submitted only to the Appeals Council. There weren't any actual clinical findings really to support the description of a possible diagnosis that's claimed it might have. I would say the absence of any kind of concurrent or clinical exam findings would render those opinions less persuasive. And, again, I would also point out that at the time that the MPPI had been administered, I believe it was in 1986, the plaintiff actually continued to work for a significant period of time thereafter. She worked up until 1992. So I would say that evidence would also demonstrate that given even if she had these symptoms, had this diagnosis, she was actually still able to work during that time with those symptoms and therefore would suggest that she's not disabled, that she can continue to work with those types of symptoms. Your Honors, I would just conclude by saying, if there are no further questions, that, again, there is evidence to suggest that claimant's position is supported, but there is also evidence to suggest that the ALJ's interpretation of the evidence is also supported. And given the circuit's case law under those circumstances, the ALJ's decision must be affirmed. And we would ask that this Court affirm the Commissioner's final decision. Thank you. Thank you, counsel. Mr. O'Hanlon, you have a couple of minutes left for rebuttal, sir. Just two points that I'd like to cover. The first is, please look at the two MMPI test reports. The first is by Dr. Fox, and the second is by Dr. Cohen. Dr. Cohen's MMPI was done about the same time that this claimant filed for disability benefits, so it's very relevant in the time period. The earlier one, which was done six or seven years earlier by Dr. Fox, no connection between the two doctors. They came up with almost the same findings of somatoform disorder functional overlay. One other error I'd like to, if I could, if I may, was when Dr. Weingarten testified, he said there's only one X-ray in this file. It's the date of April 1998. He was wrong. There were three X-rays in the file. Two additional ones in later dates, 1992, and the other one in 1993. The second and third X-rays, which Dr. Weingarten had not seen, never did see when he testified, show either disc bulges or disc herniations at three levels of the lumbar spine. We're talking about objective evidence. I've cited Singletary in my brief. The courts recognize that three either bulges or herniations will cause severe disabling pain. Did you have a question? I'm sorry. The 1992 MPI test we didn't find in the record. Was that submitted? I submitted those to the Appeals Council. They dismissed the two NMPIs with a single sentence saying that it didn't add anything to the file. That is not a legitimate reason for rejecting medical evidence. I got those records late because this case was referred to me by another attorney, and when the second hearing before Judge Donsback took place, I realized there may be some additional records that had been overlooked by the first attorney. I went to the Workers' Compensation Board. I got those files, and when I filed my appeal request for review with the Appeals Council, I submitted those. They dismissed them with no legitimate reason, no valid reason. Those are objective evidence by definition under the Social Security Act, highly recognized. And Dr. Mondry-Burk is a psychiatrist that testified at the hearing. She said, I have a concern. There's no NMPIs in this file. And there weren't at the time she spoke. But subsequently when I got those, I sent those to the Appeals Council. They should have been credited. Thank you, counsel. Thank you. You have exceeded your time. A case just argued is submitted, and we appreciate the arguments of both counsel.
judges: T. Nelson, Graber, Ikuta